FILED
2013 May-29  PM 03:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | |
|---|---|
| **MICHAEL E. WEAVER.** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | )     **Case No. 5:11-cv-03558-TMP** |
| | ) |
| **MADISON CITY BOARD OF EDUCATION** | ) |
| **and DR. DEE FOWLER, in his official capacity** | ) |
| **as Superintendent of the Madison City Board of** | ) |
| **Education,** | ) |
| | ) |
| **Defendants.** | ) |

### MEMORANDUM OPINION

This cause is before the court[1] on a motion to dismiss filed on June 22, 2012, by the defendants, Madison City Board of Education and Dr. Dee Fowler, the Board's superintendent, (collectively referred to as "the Board").  They assert that the complaint must be dismissed as to all claims against them for lack of subject matter jurisdiction. (Doc. 17).   After various extensions of time to respond, plaintiff filed his opposition to the motion on September 4, 2012 (Doc. 32), and the motion was heard for argument on November 19, 2012.  Having now carefully considered the motion, response, and argument of counsel, the court finds that the motion is due to be denied.

Plaintiff Michael Weaver filed this lawsuit against the Board on October 4, 2011 under the Uniform Services Employment and Reemployment Rights Act ("USERRA"), codified at 38 U.S.C. § 4301 *et seq*.   In its motion to dismiss, the Board argues that is immune from suit under

---

[1] The parties consented to the exercise of dispositive jurisdiction by the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c) on January 6, 2012 (Doc. 12).

USERRA as an "arm of the state" for Eleventh Amendment purposes.   At § 4323 of the Act, the United States district courts are given jurisdiction over causes of action brought under USERRA "against a private employer by a person."   When an action is brought by a private litigant against a State as an employer, however, "the action may be brought in a State court of competent jurisdiction in accordance with the laws of the state."   38 U.S.C. § 4323 (b)(2).[2]   To complicate matters further, 38 U.S.C. § 4323(i) defines the term "private employer" to include the "political subdivision[s] of a State."

The Board in this action contends that it is not a mere "political subdivision" of the State of Alabama, but a full-fledged "arm of the State" itself.  Defs.' Br. p. 3.  Although the term "arm of the State" does not appear in the jurisdictional or definitional provisions of the statute, the Board argues that because it is not a mere political subdivision of the State of Alabama, § 4323(i) does not apply and that it is an "arm of the state," immune from suit in the United States district court under the Eleventh Amendment to the United States Constitution.   Plaintiff counters that the Board is not an "arm of the state," but a "political subdivision" within the meaning of § 4323(i) and, even if the Board is an "arm of the state," the Eleventh Amendment does not bar a private suit against the State under USERRA because it was enacted pursuant to Congress's constitutional War Powers,[3] not the Commerce Clause.  Pl.'s Br. p. 24-37.

---

[2] When a USERRA action is brought against the State by the United States, jurisdiction is vested in the United States district courts.  See 38 U.S.C. § 4323(b)(1).

[3] Because the court concludes that the defendant Board is not an "arm of the State" for Eleventh Amendment purposes.  It is unnecessary to address the plaintiff's argument that USERRA was enacted under Congress's War Powers and, therefore, overrides Eleventh Amendment immunity.

<u>DISCUSSION</u>

## I.     <u>Eleventh Amendment Immunity</u>

The statutory structure of USERRA derives from a concern about Eleventh Amendment immunity.  While actions against private employers can be brought in the United States district courts, the express language of the Act itself limits suits by individuals against "a State (as an employer)" to the "State court of competent jurisdiction in accordance with the laws of the State."  This dichotomy was created by the 1998 Veterans Programs Enhancement Act, which amended the jurisdictional and venue provisions of USERRA as originally enacted.   As the Ninth Circuit Court of Appeals has explained:

> The legislative history of the 1998 amendments confirms that Congress intended that actions brought by individuals against a state be commenced in state court. The underlying reason for these amendments was that Congress was concerned about the Supreme Court's then-recent decision in *Seminole Tribe v. Florida,* 517 U.S. 44, 116 S. Ct. 1114, 134 L.Ed.2d 252 (1996).  In *Seminole Tribe,* the Court held that Congress may abrogate a state's sovereign immunity only when acting pursuant to its powers under § 5 of the Fourteenth Amendment, and not when it is acting pursuant to its Commerce Clause powers.  *Id.* at 59, 72–73, 116 S. Ct. 1114.

> * * *

> Despite the structure of the 1998 amendments' remedial scheme and its legislative history, [plaintiff] contends that USERRA provides for federal court jurisdiction for an action brought by a private individual against the University.  He argues that Congress intended to retain federal court jurisdiction over USERRA claims brought by private individuals against an arm of the State.   The Eleventh Amendment, however, bars federal jurisdiction over suits against an unconsenting state by its own citizens.  *See Hans v. Louisiana,* 134 U.S. 1, 15, 10 S. Ct. 504, 33 L. Ed. 842 (1890); *accord Seminole Tribe,* 517 U.S. at 54, 116 S. Ct. 1114.

> Although Congress may abrogate the states' sovereign immunity when "Congress has 'unequivocally expresse[d] its intent to abrogate the immunity,'" and when "Congress has acted 'pursuant to a valid exercise of power,'" *Seminole Tribe,* 517 U.S. at 55, 116 S. Ct. 1114 (quoting *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L. Ed. 2d 371 (1985)); *accord Miranda B. v. Kitzhaber,* 328 F.3d 1181,

1184–85 (9th Cir.2003), here, Congress has not unequivocally expressed an intent to abrogate the states' sovereign immunity in USERRA.

Townsend v. University of Alaska, 543 F.3d 478, 482-83, 484 (9th Cir. 2008); see also McIntosh v. Partridge, 540 F.3d 315, 320 (5th Cir. 2008).  Thus, insofar as a private individual attempts to assert a claim under USERRA against the "State (as an employer)" or against an "arm of the State," the Eleventh Amendment bars the suit.  Political subdivisions of a state, however, such as counties and municipal corporations, are not shielded, and this is reflected in the statutory definition of a "private employer" suable in district court, which includes "political subdivisions" of the state found at § 4323(i).

In the instant case, the Board acknowledges that it is not the State of Alabama, but contends that it is an "arm of the State" entitled to Eleventh Amendment immunity from plaintiff's USERRA action.  To support this argument, the Board asserts that careful analysis of the essential factors necessary for being deemed an "arm of the State" entitled to Eleventh Amendment immunity weighs in favor of such a finding with respect to the Board.  Those factors have been defined as follows: "(1) how the state law defines the entity; (2) the degree of state control over the entity; and (3) the entity's fiscal autonomy—i.e., where the entity derives its funds and who is responsible for judgments against the entity."  Stewart v. Baldwin County Bd. of Education, 908 F.2d 1499, 1509 (11th Cir. 1990) (citing Harden v. Adams, 760 F.2d 1158, 1163 (11th Cir. 1985)); see also Manders v. Lee, 338 F.3d 1304, 1309 (11th Cir. 2003) (articulating four factors to determine "arm of the State" status by dividing the Stewart opinion's factor three into two factors: where the entity derives its funds and who is responsible for paying judgments against the entity).

Referring to these factors, the Board offers a litany of statutory citations to show the degree of control the State of Alabama exercises over local school boards through the Alabama Department of Education.  Defs.' Br. p. 3.  The Board emphasizes, however, that the Alabama Supreme Court has extended "arm of the State" immunity under § 14 of the Alabama Constitution of 1901 to local boards of education.  Ex parte Hale County Bd. of Educ., 14 So. 3d 844, 848-49 (Ala. 2009)("County boards of education are not agencies of the counties, but local agencies of the state, charged by the legislature with the task of supervising public education within the counties.").  The Board stresses that how the state courts characterize a particular entity is the most important factor, and perhaps the determinative factor, for the federal courts to use in determining "arm of the State" status for an entity.  Versiglio v. Bd. of Dental Examiners of Alabama, 686 F.3d 1290, 1292 (11th Cir. 2012) ("This court gives great deference to how state courts characterize the entity in question.").

How the state courts treat an entity is only one part of the first factor of the Stewart and Manders[4] analysis.  Within the first factor the court also weighs how state *statutes* treat the particular entity.  Stewart, 908 F.2d at 1510 (discussing the local board's expenditures authorized by Alabama statute); Manders, 338 F.3d at 1319 (focusing on the dual "historical common law duties" of the sheriff and his "specific statutory duties" in determining the first factor of the "arm of the State" analysis.)  Even giving primacy to the first factor, the court is still required to examine the remaining immunity factors, reaching an independent conclusion on each.  See Manders, 338 F.3d at 1318-29 (court applies each factor and reaches an immunity conclusion for each, then aggregates all conclusions in reaching final immunity conclusion.)  While the pronouncements of the state courts with respect to the status and function of an entity is

---

[4] The court in Manders articulated a four-factor test that is substantively the same as the three factors in Stewart.

important, it is not dispositive, as the Board suggests.  This is because the Eleventh Circuit has

stressed a functional approach to assessing "arm of the State" status.  The court of appeals

explained in <u>Manders</u> that whether a particular officer or entity is an "arm of the State" must be

examined in the context of the particular function being carried out; an entity may be an "arm of

the State" when exercising some functions, but not when exercising others.

> It is also well-settled that Eleventh Amendment immunity bars suits brought in
> federal court when the State itself is sued and when an "arm of the State" is sued.
> *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S. Ct.
> 568, 50 L. Ed. 2d 471 (1977).  To receive Eleventh Amendment immunity, a
> defendant need not be labeled a "state officer" or "state official," but instead need
> only be acting as an "arm of the State," which includes agents and
> instrumentalities of the State.  *See Regents of the Univ. of Cal. v. Doe,* 519 U.S.
> 425, 429-30, 117 S. Ct. 900, 137 L. Ed. 2d 55 (1997).  Whether a defendant is an
> "arm of the State" must be assessed in light of the particular function in which the
> defendant was engaged when taking the actions out of which liability is asserted
> to arise.  *See Shands Teaching Hosp. & Clinics v. Beech St. Corp.,* 208 F.3d 1308,
> 1311 (11th Cir. 2000) ("The pertinent inquiry is not into the nature of [an entity's]
> status in the abstract, but its function or role in a particular context.").

<u>Manders v. Lee</u>, 338 F.3d 1304, 1308 (11th Cir. 2003)(*en banc*).  Just two years later, the court

of appeals reiterated this functional approach.

> As we explained in our recent *en banc* decision in *Manders v. Lee,* the law is
> "well-settled that Eleventh Amendment immunity bars suits brought in federal
> court when an 'arm of the State' is sued."  *Id.* at 1308.  The more difficult
> question -- whether the entity sued is an arm of the state -- "must be assessed in
> light of the particular function in which the defendant was engaged when taking
> the actions out of which liability is asserted to arise."  *Id.*  As the Supreme Court
> has explained in determining whether a sheriff is a state or county policymaker
> for purposes of a § 1983 action, "the question is not whether [the sheriff] acts for
> [the state] or [the county] in some categorical, 'all or nothing' manner," but rather
> whether the sheriff is acting for the state "in a particular area, or on a particular
> issue."  *McMillian v. Monroe County,* 520 U.S. 781, 785, 117 S. Ct. 1734, 138
> L.Ed.2d 1 (1997) (holding that Alabama sheriff was policymaker for the state, not
> for the county).

> To determine whether the defendant, while engaged in the relevant function, acts as an arm of the state, we conduct a four-factor inquiry, taking into account (1) how state law defines the entity; (2) what degree of control the state maintains over the entity; (3) the source of the entity's funds; and (4) who bears financial responsibility for judgments entered against the entity. *See Manders,* 338 F.3d at 1309.

Abusaid v. Hillsborough County Bd. of County Comm'rs, 405 F.3d 1298, 1303 (11th Cir. 2005). In the instant case, the Board was functioning exclusively as an employer. The facts alleged in the complaint do not suggest that it was engaged in policymaking or the execution of educational policy. The decision to rehire or assign duties to the plaintiff involved no traditional, unique, or core state functions, nor did it involve setting policy for the state.

In 2005 the court of appeals used the four-factor Manders analysis to determine whether a Florida community college is an "arm of the State" entitled to Eleventh Amendment immunity against a suit by a dismissed professor. After examining each of the four factors in the functional context of employment decision-making by the college, the court found the college to be an arm of the State, saying:

> A community college under the Florida K-20 Educational Code is an arm of the state for purposes of immunity under the Eleventh Amendment. A community college is a creature of state law, and Florida maintains substantial control over community colleges through the State Board of Education. The board of trustees of the community college must submit a budget to the State Board of Education and must account for all expenditures. Finally, the state bears potential legal liability and risk of a judgment against a community college.

Williams v. District Bd. of Trustees of Edison Community College, Fla., 421 F.3d 1190, 1194-95 (11th Cir. 2005).

Even more recently, in 2012, the court of appeals addressed whether a county health department is an "arm of the State" in Ross v. Jefferson County Dep't of Health, 701 F.3d 655 (11th Cir. 2012). Again using the Manders four-factor functional analysis, the court concluded

that the Jefferson County Health Department is an arm of the State, notwithstanding the fact that it is subject to the jurisdiction of the Jefferson County Personnel Board on many employment decisions.   Noting that the "most important factor," but not the determinative factor, in the analysis is how the agency is treated by the courts of the State, the Eleventh Circuit found that "Alabama courts have uniformly treated county boards of health as state agencies."   Id. at 659. Further, in applying the four-factor analysis, the court observed that the county health department is created by the State, given its public-health mandate by the State, and is under the control of the State Health Officer.   Its employment decisions are under the control of the State Board of Health.   Interestingly, even though funding of a county health department comes from the county, "County funding of the Health Department does not 'tip the balance' against immunity because there is no evidence that the county exerts control over the Health Department, and the county funds the Health Department only because state law requires it to do so."   Id. at 660 (internal citations omitted).   Finally, the court of appeals stated that "who foots the bill" for a judgment against a county health department is not dispositive of immunity.   It is but one of the four factors that make up the analysis.

> As to the fourth factor, our precedent holds that liability by the state treasury is not determinative of whether a governmental entity should enjoy Eleventh Amendment immunity. The lack of a per se rule derives from states [sic] maintenance of "certain attributes of sovereignty, and a purpose of the Eleventh Amendment is to accord[ ] the States the respect owed them as members of the federation and not to affront the dignity or integrity of a state by requiring a state to respond to lawsuits in federal courts."   The Health Department is responsible for paying any monetary judgment "out of [its] budget," and state law exempts the county from any claim against the Health Department. Ala. Code § 22–3–12.   We do not limit Eleventh Amendment immunity "to who foots the bill ...." *Manders*, 338 F.3d at 1328.

Ross v. Jefferson County Dep't of Health, 701 F.3d 655, 660-61 (11th Cir. 2012)  (internal citations omitted).

Although these cases continue to mandate the four-factor test in Manders, they are necessarily indicative of how a city board of education should be characterized.  Each entity is different in the degree to which the State maintains and exercises control, and how it is funded and its liability for payment of judgment.  Also, the existence of precedential decisions regarding particular entities necessarily set boundaries for the court's analysis, and that is particularly true in this case due to the precedent established in Stewart.

A.   Is a City School Board an "Arm of the State" ?

The court's task in applying the three- or four-factor test for "arm of the State" status in this particular case is eased by circuit precedent.  The defendant Board recognizes that the Eleventh Circuit Court of Appeals faced the question of whether Eleventh Amendment immunity shields local Alabama boards of education in Stewart.  Defs.' Br. p. 73-74.  The court there stated the issue explicitly as, "Whether a local school board is protected by Eleventh Amendment immunity … turns on the question of whether the board is properly classified as an 'arm of the State' or as a 'municipal corporation or other political subdivision.'"  Stewart v. Baldwin County Bd. of Education, 908 F.2d 1499, 1509 (11th Cir. 1990) (citing Mt. Healthy Bd. of Education v. Doyle, 429 U.S. 274, 280, 97 S. Ct. 568, 572, 50 L.Ed.2d 471 (1977)).  Utilizing a three-factor Eleventh Amendment analysis, the court of appeals ultimately concluded that the Baldwin County Board of Education was not an "arm of the State" for purposes of Eleventh Amendment immunity.  Stewart, 908 F.2d at 1511.  In doing so, the court stressed that local county boards "have a degree of fiscal autonomy comparable to that of the school boards at issue in Mt. Healthy," "have the power to establish general education policy for the schools… and possess

9

general administration and supervision responsibility for the schools," and "the boards are subject to a significant amount of local control" in that board members "are elected by 'the qualified electors of the county'… and they receive compensation from the public funds of the county…." Stewart v. Baldwin County Bd. of Education, 908 F.2d 1499, 1511 (11th Cir. 1990). Thus, in the instant case, this court starts with the recognition that binding circuit precedent has determined the question the defendant Board wants to assert. Beyond the binding effect of Stewart, analyzing the status of a city school board, when performing an employment function, under the four-factor test still results in a finding that local school boards are sufficiently autonomous as to be political subdivisions of the state, not an "arm of the State."

### (1). Binding Precedent Answers the Question

The Board argues that the holding in Stewart, that local school boards have some autonomy from the state "was not correct at the time, and is plainly wrong today." Defs.' Br. p. 89. The Board contends that the court in Stewart misapplied Supreme Court precedent and relied on "decisions arising from other states that relied on…state[] laws that do not comport with Alabama law," Defs.' Br. p. 91, and "fail[ed] to acknowledge the extensive and all-encompassing corpus of statutes, regulations, and judicial decisions that preempt, limit, or otherwise control the local board's deconsmaking [sic] discretion." Defs.' Br. p. 97. Finally, the Board characterizes the Eleventh Amendment reasoning in Stewart as "specious" and "a gratuitous afterthought." Defs.' Br. p. 114, 117. Whether true or not, this court is not empowered to disregard clearly binding circuit authority that has not been overruled.

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against any one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State.

Although by its terms the Eleventh Amendment bars suits against states only "by Citizens of another State," the Supreme Court has held that the Eleventh Amendment also bars suits against a state by its own citizens.  Hans v. Louisiana, 134 U.S. 1, 10 (1890).  This protection from suit extends to state officials in appropriate circumstances, but does not extend to political subdivisions, such as counties and municipalities.  Stewart, 908 F.2d at 1509 (citing Mt. Healthy Bd. of Education v. Doyle, 429 U.S. 274, 280 (1977)).  The question of Eleventh Amendment protection for a local school board "turns on the question of whether the board is properly classified as an 'arm of the State' or as a 'municipal corporation or other political subdivision.'" Stewart, 908 F.2d at 1509 (citing Mt. Healthy, 429 U.S. at 280).  The ultimate authority for resolving a particular entity's "arm of the state" status is one of federal law, not state law, even though the way state law categorizes an entity is an important factor in the analysis.   Stewart, 908 F.2d at 1509 (citing Howlett v. Rose, 496 U.S. 356, 377-78 (1990) ("To the extent that the [state] law of sovereign immunity reflects a substantive disagreement with the extent to which governmental entities should be held liable for their constitutional violations, that disagreement cannot override the dictates of federal law").

There is no question that Stewart directly applies to this case.[5]  Stewart involved a local Alabama school board seeking Eleventh Amendment immunity as an "arm of the State" when an ex-employee brought a lawsuit under 42 U.S.C. § 1983.  908 F.2d at 1502.  This case involves a local Alabama school board seeking Eleventh Amendment immunity as an "arm of the State" after an employee brought an employment-discrimination lawsuit under a federal statute,

---

[5] The only significant distinction is that the plaintiff in Stewart filed a claim under 42 U.S.C. § 1983, not USERRA or its precursor.  908 F.2d at 1502.

USERRA.  After an analysis of state law and a discussion of local school boards' functions, the Eleventh Circuit held in <u>Stewart</u> that the Baldwin County Board of Education was not an "arm of the State" for Eleventh Amendment purposes.  <u>Id.</u> at 1511.   Because there is no significant difference between the school boards involved in <u>Stewart</u> and the instant case, and being bound by precedent, this court must reach the same conclusion.

In effect, the Board wants this court either to ignore <u>Stewart</u> or implicitly overrule it. This court does not, however, have the discretion to ignore binding precedent, much less overrule a previous Eleventh Circuit decision that appears to be on point.  The right to overrule <u>Stewart</u> rests with the court of appeals or the United States Supreme Court.  The structure of the federal judicial system requires lower courts to faithfully apply legal precedent established by supervisory appellate courts.  <u>Rodriguez de Quijas v. Shearson/American Express, Inc.</u>, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions"); <u>accord</u>, <u>e.g.</u>, <u>Agostini v. Felton</u>, 521 U.S. 203, 237 (1997) ("We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent"); <u>see</u> <u>also</u> <u>Jefferson County v. Acker</u>, 210 F.3d 1317, 1321 (11th Cir. 2000) ("Where a Supreme Court decision that has not been overruled is squarely on point and therefore 'directly controls' the case at hand, we are to follow it even though convinced that the Court will overturn that decision the next time it addresses the issue."); <u>King v. Cessna Aircraft Co.</u>, 505 F.3d 1160, 1169 (11th Cir. 2007), quoting <u>Fla. League of Professional Lobbyists, Inc. v. Meggs</u>, 87 F.3d 457, 462 (11th Cir. 1996) ("[W]e are not at liberty to disregard binding case law that is so closely on point and has been only weakened, rather than directly overruled, by the Supreme

Court.").  Just as the court of appeals may not ignore or overrule Supreme Court precedent, this court may not ignore or overrule circuit precedent.  Even if this court agreed that recent Eleventh Circuit cases have raised questions about the conclusion reached in <u>Stewart</u> (the court, in fact, does not so agree), it is for the court to appeals to reconcile them with <u>Stewart</u> or overrule it; this court has no license to do so.  Despite the Board's assertion that the statutory and regulatory changes in the Alabama educational system since <u>Stewart</u> was decide require this court to reach a conclusion at odds with <u>Stewart</u>, it is not this court's prerogative to ignore precedent simply because it appears to have been eroded by subsequent events.

It is possible, as the Board insists, that <u>Stewart</u> might be decided differently today given more recent decisions in both state and federal court expanding upon the "arm of the State" analysis.  This court is not convinced, however, that the outcome in <u>Stewart</u> would be different.  For example, to support the argument that local school boards do not have fiscal autonomy from the state, the Board emphasizes that local school funds are in fact state funds.  Defs.' Br. p. 82, 88.  For this proposition, the Board cites various Alabama cases decided decades *before* <u>Stewart</u>.  <u>See</u> <u>State v. Tuscaloosa County</u>, 163 So. 892, 894 (Ala. 1937) ("public school funds, as between the county and the State, are State funds"); <u>Williams v. State for Use and Benefit of Pickens County</u>, 161 So. 507, 508 (Ala. 1935)("County and district school taxes … go to the maintenance of state schools, parts of the system of state schools, just as other public school funds"); <u>City Board of Education of Athens v. Williams</u>, 163 So. 802 (Ala. 1935) (school funds, regardless of source, are held by the board of education for the system of state schools, to be expended for the benefit of students served by the district);  <u>Hamilton v. Pullman Car Mfg. Corp.</u>, 163 So. 329, 330 (Ala. 1935) ("It is true that in a sense a public school tax is a state tax and that a municipality acts as an agent of the state in levying, collecting and disbursing that

tax"). The Stewart court had the benefit of considering these Alabama cases, all of which are at least 50 years older than Stewart. Even in light of these decisions, the court of appeals ruled that local Alabama school boards have a degree of fiscal autonomy such that they are not "arms of the State." Stewart, 908 F.2d at 1510-11 ("It is clear that Alabama school boards have a degree of fiscal autonomy... [c]onsequently, even though the school boards are required to submit their budgets to the state superintendent for approval… it cannot be said that a judgment against a county school board will come from state funds." (internal citations omitted)).

Additionally, the "arm of the State," four-factor analysis remains unchanged from how it was used in Stewart and Manders. The Board can point to no significant state statutory development between the time Stewart was decided and today that would greatly modify the Eleventh Circuit's analysis. Indeed, the Supreme Court case on which the Eleventh Circuit relied in Stewart, Mt. Healthy Bd. of Educ. v. Doyle, in which the Supreme Court found Ohio school boards to be political subdivisions rather than arms of the State, remains good law. The only significant change in the law relating to Eleventh Amendment immunity is the Alabama Supreme Court's holding in Ex parte Hale County Bd. of Education, 14 So. 3d 844 (Ala. 2009), in which local boards were given "arm of the State" immunity under § 14 of the Alabama Constitution. Id. at 848-49. As noted above, however, the manner in state courts treat the entity is but one part of the first factor in the immunity analysis. Certainly there are parallels between the possible impact of Hale County on this case and that of the Alabama Supreme Court in Versiglio. The difference is that, in Versiglio, the court of appeals was considering the status of the Board of Dental Examiners for the first time, free of circuit precedent involving that

particular entity.   Here, <u>Stewart</u> and other circuit precedent[6] have long regarded local school boards as political subdivisions of the State of Alabama as a matter of federal law, and <u>Hale County</u> does not upset that circuit precedent.[7]

Moreover, even before <u>Stewart</u> was decided, district courts in Alabama had already concluded on the basis of <u>Mt. Healthy</u> that city and county school boards were not "arms of the State."   For example, the Southern District of Alabama rejected an Eleventh Amendment argument on behalf of a local school board, saying:

> [T]he defendants have also moved to dismiss plaintiff's § 1983 claims against the defendant Escambia Board of Education ("Board") and against the named individual members in their official capacities of the Board on the ground that such claims are barred by the doctrine of sovereign immunity as established by the eleventh amendment to the United States Constitution. This issue presents the most difficult question for the Court to decide.
>
> When faced with this issue, the United States Supreme Court stated
>
> > The bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances, *Edelman v. Jordan*, 415 U.S. 651, 94 S. Ct. 1347, 39 L.Ed.2d 662

---

[6]  See, e.g., <u>Travelers Indemnity Company v. School Board of Dade County</u>, 666 F.2d 505, 507–509 (11th Cir. 1982) ("[O]rdinarily boards of education in Florida are not qua boards of education protected from suit by the Eleventh Amendment"); <u>Campbell v. Gadsden County District School Board</u>, 534 F.2d 650, 655–656 (5th Cir. 1976) ("Our post-Edelman cases involving actions for retrospective monetary relief against county school boards and similar entities have held that the Eleventh Amendment does not bar such awards so long as the entities sued are locally controlled, essentially local in character, and the funds to defray the award would not be derived primarily from the state treasury"); <u>Adkins v. Duvall County School Board</u>, 511 F.2d 699, 693 (5th Cir. 1975).

[7]  The Board's reliance on <u>Hale County</u> also fails to take into account the functional approach to the four-factor analysis stressed by federal law.  For <u>Hale County</u> to have significant impact, the Board must show that the school board involved there was also acting in its employment function, as distinct from some function more closely related to core state functions.  For the reasons explained below in text, the Board cannot make that showing.

(1974); *Ford Motor Co. v. Dept. of Treasury*, supra, [323 U.S. 459, 464–466, 65 S. Ct. 347, 350–351, 89 L. Ed. 389 (1945) ], but does not extend to counties and similar municipal corporations. See *Lincoln County v. Luning*, 133 U.S. 529, 530, 10 S. Ct. 363, 33 L. Ed. 766 (1890); *Moor v. County of Alameda*, 411 U.S. 693, 717–721, 93 S. Ct. 1785, 1799–1801, 36 L.Ed.2d 596 (1973).  The issue here thus turns on whether the Mt. Healthy Board of Education is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend. The answer depends, at least in part, upon the nature of the entity created by state law.

*Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 280, 97 S. Ct. 568, 572, 50 L.Ed.2d 471 (1977).

The Court of Appeals for the Eleventh Circuit set forth the following factors a federal court is to consider when deciding the question of whether the entity is an instrumentality of the state: "Factors that bear on this determination include the definition of 'state' and 'political subdivision', the state's degree of control over the entity, and the fiscal autonomy of the entity." *Fouche v. The Jekyll Island– State Park Authority*, 713 F.2d 1518, 1520 (11th Cir. 1983) (citations omitted). Accord *Harden v. Adams*, 760 F.2d 1158, 1163 (11th Cir. 1985).

\* \* \*

A reading of the Code of Alabama reveals the following information relevant in this Court's *Mt. Healthy* analysis. The county board of education members are elected by "the qualified electors of the county" (ALA.CODE § 16–8–1).  The board members receive compensation "from the public funds of the county" (ALA.CODE § 16–8–5).  The Board has the right to buy, lease, and sell real and personal property for school purposes.  The Board is permitted to sue and contract, and it may be sued on such contracts.  (ALA.CODE § 16–8–40; *Sims v. Etowah County Board of Education*, 337 So. 2d 1310 (Ala. 1976)).  The Board is invested with "the general administration and supervision" of local public schools (ALA.CODE §§ 16–8–8 & –9).  Further, the Board "determine[s] and establish[es] a written educational policy for the county" (ALA.CODE § 16–8–10).  Additional evidence of local control is demonstrated by the requirement that the Board hold "a meeting for the purpose of giving the public an opportunity of presenting to the board matters relating to the allotment of public school funds or any other matter relating to the administration of the public schools of the county."  (ALA.CODE § 16–8–3).  The Board "may issue and sell interest-

bearing tax anticipation warrants" (ALA.CODE § 16–13–70 et seq.).  All local money raised for the support of public schools by taxation is apportioned and expended in the district(s) or counties in which it was raised, under such rules and regulations as the county or city board of education may proscribe (ALA.CODE § 16–13–32).  The Code also provides for the use of county sales and use tax funds for general educational purposes (ALA.CODE § 16–13–37).  The Board may "borrow money in anticipation of the current revenues for that fiscal year" (ALA.CODE § 16–13–145) or "in anticipation of [authorized] warrants" (ALA.CODE § 16–13–211).

It is true, as the defendants assert, that the state of Alabama exercises some degree of control over the county boards of education.  See the statutory citations in defendants' brief, pp. 5–7).  That the county boards of education are not completely autonomous is not disputed.  What is disputed is the extent of the state's control over the county boards.  A very significant factor is that any award of monetary damages (if the plaintiff proves to be successful on her causes of action) would be paid from the coffers of the county, not from the state treasury.

The Court is aware that the Alabama Supreme Court has ruled that county boards of education are immune from tort suits under the eleventh amendment.  *Hutt v. Etowah County Board of Education*, 454 So. 2d 973, 974 (Ala. 1984).  However, as noted by another judge of this Court, the immunity which the defendant Escambia County Board of Education claims "is limited to state-created tort actions," and "the immunity provided by state law does not bar a federally-created cause of action."  *Smith v. Dallas County Board of Education*, 480 F.Supp. 1324, 1336, n. 2 (S.D.Ala. 1979).

This Court finds under the *Mt. Healthy* analysis that the county board of education is not an entity of the state for purposes of eleventh amendment immunity.  Hence, the defendant Board is not entitled to the protection of the doctrine of sovereign immunity as to plaintiff's § 1983 causes of action.  Accord *Smith*, 480 F.Supp. at 1336; *Andrews v. Coffee County Board of Education*, No. 87–D–1095–S, 1988 WL 214509 (M.D.Ala. Jan. 15, 1988); *Coleman v. Lowndes County Board of Education*, No. 88–V–220–N (M.D.Ala. May 5, 1988).

<u>Rolin v. Escambia County Bd. of Educ.</u>, 752 F. Supp. 1020, 1025-26 (S.D. Ala. 1990) (footnotes

omitted).[8]

  Since <u>Stewart</u>, courts in the Eleventh Circuit, and particularly district courts in Alabama,

have consistently found that local boards of education are not protected by the Eleventh

Amendment as "arms of the State."  Rather, there is a consistent line of authority holding them to

be local political subdivisions, comparable to counties and municipalities.  For example, in <u>Does</u>

<u>1,2,3,4 v. Covington County Sch. Bd.</u>, 969 F. Supp. 1264, 1273 (M.D. Ala. 1997), the district

court held, rejecting an argument for Eleventh Amendment immunity under <u>Seminole Tribe</u>, that

---

[8]  Similarly, in a decision by then-U.S. District Judge Joel Dubina *before* <u>Stewart</u>, "arm of the State" status and Eleventh Amendment immunity for a county school board were rejected. Foreshadowing <u>Stewart</u>, Judge Dubina looked to Alabama statutory law to determine the degree of autonomy exercised by local boards.  He determined that the following statutory provisions vested local school boards with sufficient autonomy from the state that they could not also claim to be a mere "arm of the State":

> As in *Mt. Healthy,* the Coffee County School Board receives significant guidance and funding from the state.  However, the Board is elected locally (*Ala. Code* 16–18–1), has general administrative supervision of local public schools (*Ala. Code* 16–8–9) and establishes the educational policy of the county (*Ala. Code* 16–8–10).  It also has the power to hold and sell property, the power to contract and the power to sue and be sued (*Ala. Code* 16–8–40).  Local control is also evidenced by the requirement of an annual public meeting "to give the public the opportunity of presenting to the Board matter relating to the administration of school funds or any other matter relating to the administration of the public schools of the county." (*Ala. Code* 16–8–3).  Moreover, all local money raised for the support of public schools by taxation as apportioned and expended in the district(s) or counties in which it was raised under such rules and regulations as the county or city may proscribe (*Ala. Code* 16–13–32).  A local school board may issue and sell interest bearing tax anticipation warrants (*Ala. Code* 16–13–70, *et seq.*).  The Code also provides for the use of county sales and use tax funds for general educational purposes (*Ala. Code* 16–13–37).  The Board may borrow funds against revenues of current year (*Ala. Code* 16–13–145) or in anticipation of warrants authorized (*Ala. Code* 16–13–211).

<u>Andrews v. Coffee County Bd. of Educ.</u>, 1988 WL 214509, *5 n.1 (M.D. Ala. Jan. 15, 1988).

"the defendants' argument is foreclosed by <u>Stewart v. Baldwin County Bd. of Educ.,</u> 908 F.2d

1499, (11th Cir.1990), in which the Court of Appeals for the Eleventh Circuit held that under

Alabama law, a county board of education is 'not an "arm of the state" for purposes of Eleventh

Amendment immunity.'"   The court went on to explain its rationale, as follows:

> In *Stewart,* the court, relying on *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977), observed that whether a local school board is protected by Eleventh Amendment immunity depends on whether the school board is properly classified as "an arm of the state." 908 F.Supp. at 1509.  The court went on to state that "the ultimate question of whether the state is the 'real party in interest' is one of federal law, not state law." *Id.* (citing *Howlett v. Rose,* 496 U.S. 356, 110 S. Ct. 2430, 110 L. Ed. 2d 332 (1990)). However, the defendants argue that *Seminole Tribe* stands for the further proposition that, a state entity's status, for purposes of Eleventh Amendment immunity analysis (i.e. whether an entity is or is not an "arm" of the state), is controlled by state law rather than federal law.  The Court does not read *Seminole Tribe* to support defendants' contention.  The Court will not diverge from controlling precedent absent a clear invitation from the Eleventh Circuit or Supreme Court.

<u>Does 1,2,3,4 v. Covington County Sch. Bd.,</u> 969 F. Supp. 1264, 1273 n.5 (M.D. Ala. 1997).

Likewise, in <u>Kendrick v. Jefferson County Bd. of Educ.,</u> 932 F.2d 910 (11th Cir. 1991), the

Eleventh Circuit *reversed* a district court for granting Eleventh Amendment immunity to an

Alabama school board.  "[W]e held in <u>Stewart</u> that county boards of education in Alabama are

not entitled to eleventh amendment immunity." <u>Id.</u> at 914.

This line of authority has continued even after <u>Hale County</u>.  As recently as last year,

citing <u>Stewart</u>, the Southern District of Alabama rejected the argument that Mobile school

officials are "state officials" for Eleventh Amendment protection.  See <u>M.R. v. Bd. of School

Comm'rs of Mobile County,</u> 2012 WL 2931263, *3 n.8 (S.D.Ala. July 18, 2012) ("[T]he

Individual Defendants are not state officials, so any kind of Eleventh Amendment analysis would

be wholly inapposite here…..").  Stressing the functional approach to "arm of the State" analysis,

the Middle District of Alabama also reached the conclusion that, at least with respect to employment decisions, local school boards are not immune from liability under either federal or Alabama law.  The court wrote:

> Under Alabama law, the various county boards of education are state agencies for purposes of immunity pursuant to Section 14 of the Alabama Constitution.  *Ex parte Hale County Board of Education,* 14 So.3d 844, 848–49 (Ala.2009)("County boards of education are not agencies of the counties, but local agencies of the state, charged by the legislature with the task of supervising public education within the counties.... Because county boards of education are local agencies of the State, they are clothed in constitutional immunity from suit[.]") (citations and internal quotation marks omitted).  However, both the Eleventh Circuit and the Alabama Supreme Court have determined, in cases involving challenged employment actions, that county boards of education in Alabama are not "arms of the state" entitled to Eleventh Amendment immunity. *Stewart v. Baldwin County Board of Education,* 908 F.2d 1499, 1511 (11th Cir. 1990); *Ex parte Madison County Board of Education,* 1 So. 3d 980 (Ala. 2008). Accordingly, the Board is not entitled to Eleventh Amendment immunity as to plaintiff's § 1983 claim.

Belton v. Russell County Bd. of Educ., 2012 WL 4478668 (M.D. Ala. Aug. 1, 2012) supplemented, 2012 WL 4478755 (M.D. Ala. Aug. 16, 2012), report and recommendation adopted, 2012 WL 4476075 (M.D. Ala. Sept. 26, 2012), report and recommendation adopted, 2012 WL 4476075 (M.D. Ala. Sept. 26, 2012).

These cases demonstrate a universal assessment, both before and after Stewart that, at least when it comes to decisions made by a local school board as an employer, it is a local political subdivision, not an arm of the State entitled to Eleventh Amendment immunity. Because Stewart remains binding authority, the court is required to follow its instruction and holding that local school boards are not arms of the state.  Nothing in the cases decided since Stewart overrule or limit its application; indeed, all cases continue to cite Stewart as the leading case on the Eleventh Amendment status of local school boards.  Even if the rationale for Stewart has been weakened or eroded, this court has no discretion to disregard it.

(2).  Four-Factor Test Answers the Question

Even if the court were to assume that the result in Stewart is not binding on the court, application of the four-factor analysis also leads to the conclusion that a city board of education is sufficiently autonomous to be regarded as a political subdivision of the state rather than an arm of the state itself.   The four factors the court must consider are: (1) how the state law defines the entity; (2) the degree of state control over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity. Stewart v. Baldwin County Bd. of Educ., 908 F.2d 1499, 1509 (11th Cir. 1990) (citing Harden v. Adams, 760 F.2d 1158, 1163 (11th Cir. 1985)); see also Manders v. Lee, 338 F.3d 1304, 1309 (11th Cir. 2003).  While no single factor is determinative, recent authority has described the first factor as the most important.  Ross v. Jefferson County Department of Health, 701 F.3d 655 (11th Cir. 2012); Versiglio v. Bd. of Dental Examiners of Alabama, 686 F.3d 1290, 1292 (11th Cir. 2012).  In the end, however, it is court's task to utilize all of the factors to assess whether the entity in question is sufficiently separate from the State as to be regarded as a political entity distinct from the State itself.

Despite the Board's citation of Hale County, Alabama law actually is ambivalent about the nature of local school boards.  First, Hale County involves a county school board, not a city school board as is the defendant in the instant case.  It is not entirely clear that Hale County speaks to the status of city school boards.[9]  But even assuming it does, there is nothing really new in Hale County.  The language latched upon by the Board, that school boards are "local

_____

[9]   It is perhaps significant that in Hale County, the court repeatedly uses the adjective "county" board of education, rather than a more generic "local" board of education.  None of the cases cited in Hale County involves municipal boards of education and all involved litigation with a county board.  County boards of education are authorized, organized, and empowered under a separate chapter of the Alabama Code from city boards of education, although the basic language of each is quite similar.  Compare Ala. Code § 16-8-1 et seq. (1975) to Ala. Code § 16-11-1 et. seq. (1975).

agencies of the state," is not a new concept.  Indeed, the concept and phrasing originated in Hutt Through Hutt v. Etowah County Bd. of Educ., 454 So. 2d 973, 974 (Ala. 1984), and goes back to at least 1928.  See Gleeson Mfg. Co. v. County Board of Education, 217 Ala. 565, 117 So. 163 (1928).  Thus, even at the time Stewart was decided by the Eleventh Circuit, Alabama courts had long described local boards of education as "local agencies of the state," yet this did not deter the court of appeals from finding that the Baldwin County Board of Education was a political subdivision, not entitled to Eleventh Amendment immunity.  Hale County did not introduce a new element in the four-factor analysis, so there is no reason to believe that it would change the Stewart outcome.

Also, as pointed out in Belton v. Russell County School Board, *supra*, Alabama law grants state-constitutional immunity to local school boards on state-law matters, but not federal-law matters.  Just the year before Hale County was decided, in Ex parte Madison County Bd. of Education, 1 So. 3d 980 (Ala. 2008), the Alabama Supreme Court rejected the notion that, with respect to employment decisions,[10] a local school board is immune.  Focusing on the Stewart and Manders functional approach, the court observed that the "Board's function that is at issue here involves the Board's ability to transfer and/or terminate a teacher's employment."  Id. at 987. Applying the four-factor test to the "particular function" of employment of teachers, the Alabama Supreme Court found that the local board was *not* entitled to Eleventh Amendment immunity, reasoning as follows:

---

[10]   In Hale County, the board of education was sued on an implied-contract theory by a person who bought a ticket to and was injured at a school-sponsored basketball game.  The case did not involve the board's function as an employer.

1.  **How State law defines a county board of education**.

The Alabama Legislature has specifically defined and designated the responsibilities of a county board of education.  In § 16-8-1, Ala.Code 1975, the legislature provided that a county board of education "shall be composed of five members, who shall be elected by the qualified electors of the county."  Section 16-1-30(b), Ala.Code 1975, provides that a county board of education shall determine its own written educational policy for the board and its employees and "shall prescribe rules and regulations for the conduct and management of the schools."  A county board of education is vested with the "general administration and supervision" of the schools in its county. § 16-8-8, Ala.Code 1975.  Specifically, a county board of education "may suspend or dismiss for immorality, misconduct in the office, ... or whenever, in the opinion of the board, the bests interests of the school require it, superintendents, principals, teachers, or any other employees ...." § 16-8-23, Ala.Code 1975.  Likewise, a county board of education can transfer any teacher to a different position, school, or grade if the board determines a transfer is needed. § 16-24-5, Ala.Code 1975.  The legislature also specifically provided that a teacher subject to transfer or termination has the right to contest the board's decision by a hearing before the board. § 16-24-6, Ala.Code 1975.  Thus, the Board maintains significant authority with regard to the employment and conduct of its teachers; this factor lends little weight to the Board's being considered an "arm of the State" and thereby entitled to Eleventh Amendment immunity.

2.  **The degree of control the State maintains over the county board of education.**

The Board argues that because the State superintendent of education has final, binding "authority to review actions and orders of county and city boards of education ... in matters relating to finance and other matters seriously affecting the educational interest," see § 16-4-8, Ala.Code 1975, a county board of education is governed by and limited by the boundaries set by the State.  The Board provides an extensive list of limitations placed on the authority of county boards of education.  This Court, however, has specifically recognized:

> "However broad may be the powers of the State Board of Education, ... we think it clear that the authority to exercise general control and supervision over the county ... boards of education does not include the authority to exercise the powers and authority which the Legislature has specifically conferred upon such local boards.
> "....
> "In regard to the authority to transfer or reassign teachers from one public school to another public school within a ... county school system, it is conferred upon local boards of education ...."

*In re Opinion of the Justices No. 180,* 276 Ala. 239, 241, 160 So. 2d 648, 650 (1964).

Thus, because the legislature has specifically vested in county boards of education the authority to transfer, suspend, or dismiss teachers, this second factor does not weigh in favor of the Board's being considered an "arm of the State" and thereby entitled to Eleventh Amendment immunity.

### 3.   Where the county board of education derives its funds.

The Board argues that because this Court has held that all public-school funds are State funds, whether collected at the State or the local level, we must conclude that this factor weighs heavily in favor of the Board's being considered an "arm of the State." See *Mobile, Alabama-Pensacola, Florida Bldg. & Constr. Trades Council v. Williams,* 331 So. 2d 647, 648 (Ala.1976) (holding that regardless of whether the public-school funds come from the State treasury or from local taxation, public-school funds are State funds); and *State v. Tuscaloosa County,* 233 Ala. 611, 613, 172 So. 892, 894 (1937) ("[P]ublic school funds, as between the county and State, are State funds."). The fact that this Court has declared all public-school funds to be State funds does not address the question from where the Board *derives* its funds. Nothing properly before us indicates the source of the Board's funds; therefore, without any documentation to support this factor, we cannot conclude that it weighs in favor on the Board.

### 4.   Who is responsible for judgments against the entity.

The Board boldly asserts that, "[i]f all school funds are *State* funds, then any judgment against the Madison County Board of Education must be satisfied entirely from State funds allocated and intended for the education of students in Madison County." As with the third factor, such a general conclusion without any evidentiary support does not support the conclusion that any judgment against the Board would be payable out of the State treasury.

Thus, application of the *Manders* test to the facts before us does not support a finding that the Board has established a right to Eleventh Amendment immunity.

Ex parte Madison County Bd. of Education, 1 So. 3d 980, 987-89 (Ala. 2008) (internal footnotes

omitted). There can be few clearer statements of how the Alabama state courts treat local school

boards when they exercise the particular functions of being an employer. While it is true that

Madison County involves the employment and assignment of a teacher, there is no reason to

believe that the particular function of employing and assigning a financial officer requires a

different result.  Thus, because the Alabama Supreme Court itself has rejected "arm of the State" status for local boards in their capacities as employers, the first factor in the four-factor analysis weighs heavily against finding local school-board employers to be "arms of the State" for Eleventh Amendment purposes.

Likewise, for the reasons articulated by the Alabama Supreme Court in <u>Madison County</u>, the degree of control maintained by the state over the employment decisions of local school boards is not sufficient to tip the analysis in favor of Eleventh Amendment immunity.  Board members are appointed by the Madison city government.  <u>Alabama Code</u> § 16-11-3 (1975).[11] <u>Alabama Code</u> § 16-11-9 (1975) grants city school boards "all the powers necessary or proper for the administration and management…" of the local school district.  <u>Alabama Code</u> § 16-11-17 (1975) vests in city school boards the power to "fix the salaries of all employees," and to "suspend or dismiss any principal or… other regular employee so appointed on the written recommendation of the city superintendent of schools…."  Likewise, the city superintendent "shall nominate in writing for appointment by the city board of education all principals,… and all other employees of the board and shall assign them to their positions, transfer them…, recommend them for promotion, suspend them… and recommend them for dismissal…." <u>Alabama Code</u> § 16-12-16 (1975).  Thus, when exercising the functions of an employer, city school boards and city superintendents have a great degree of autonomy from the state.  There is nothing to indicate that this core employment function is controlled or directed by the State Board of Education or the State Superintendent.  The second factor under <u>Stewart</u> and <u>Manders</u>, therefore, weighs heavily against finding the school board as employer is an "arm of the State."

---

[11]     It is not clear whether, under <u>Ala. Code</u> § 16-11-3.2 (1975), Madison is a Class 4 municipality for which local legislation allows for election of school board members.  In any event, either method of selecting school board members simply underscores the local nature and control of the Board.

On the third factor, the Board makes the same argument rejected by the Alabama Supreme Court that, regardless of where local school funds are derived from, they are all regarded as state funds.  Although it is true that Alabama case law has held that all school funds are "state funds," the test under Manders, as noted by the Alabama Supreme Court, is not who holds the funds, but from where are the local board's funds *derived*.  Although Exhibit I to the Board's brief shows that *statewide* 48% of school funding comes from state sources (52% comes from local, federal, and private sources), there is no evidence concerning the sources of funding for the Madison City Board of Education.  There is no reason to believe that the Board receives a significantly greater percentage of state funding than other schools statewide, and thus approximately half of the Board's funding *derives* from sources other than the State.  Although the Board is not completely autonomous from the State, it exercises a great degree of autonomy in raising funds independently of the State.  For this reason, this factor also weighs against finding the Board to be an arm of the state.

Finally, the fourth factor also weighs against "arm of the State" status.  Insofar as any monetary judgment may be returned against the Board, it can be paid out of non-state funds.  A judgment simply will not implicate the State treasury or embarrass the dignity of the State.  This factor does not "tip the balance" in favor of immunity because the Board has sufficient ability to "foot the bill" without state funds.

The four-factor Manders analysis for assessing whether an entity is an "arm of the State" for Eleventh Amendment purposes still results in the finding that a local city school board is a political subdivision, not an arm of the State.  Therefore, even if this court is not bound by the court of appeals' prior decision in Stewart, application of the analysis does not change the outcome reached in Stewart.

<u>CONCLUSION</u>

Until the Eleventh Circuit or the Supreme Court rules otherwise, the holding in <u>Stewart</u> governs this case.  And that is true whether as simple binding precedent or through application of the multi-factor test enunciated in it.  Therefore, the Board's motion to dismiss is due to be denied.

Based on the foregoing considerations, a separate order will be entered DENYING the motion to dismiss by defendants Madison City Board of Education and Dr. Dee Fowler.

DONE this 28th  day of May, 2013.


_____
T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE